UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHAEL SCOTT CROSBY                         CIVIL ACTION NO. 10-cv-1581

VERSUS                                       JUDGE FOOTE

WARDEN, LOUISIANA STATE                      MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish grand jury indicted Michael Scott Crosby ("Petitioner") with one count of aggravated rape and one count of aggravated kidnapping. A jury convicted him of a lesser count of forcible rape and could not reach a verdict on the kidnapping charge. Petitioner was sentenced to 40 years imprisonment.

Petitioner frequently complained about his attorneys, vacillated between wanting counsel and asking to represent himself, engaged in frequent outbursts and misbehavior in the courtroom, and had to be removed during his own testimony after he accused the judge of conspiring with the prosecution to conceal evidence. He complained on direct appeal that he was denied his right to self-representation, should not have been removed from the courtroom, and was denied the right to testify. The appellate court affirmed the conviction. State v. Crosby, 6 So.3d 1281 (La. App. 2d Cir. 2009).

Petitioner later filed a post-conviction application in state court and raised the 35 claims that he now presents in his 116-page federal petition. The claims include invalid

arrest warrant, excessive bail, denial of a preliminary exam, conviction by conspiracy, planted evidence, judicial misconduct, errors in court minutes, conviction by a biased jury, and denial of appeal. For the reasons that follow, all claims presented in the petition are procedurally barred.

**Facts**

Petitioner and the victim, S.C., were married for several years and had a daughter who was almost two years old at the time of the relevant events. S.C.'s testimony is found at Tr. 766-818. S.C. filed for divorce in early August 2006 and moved with her daughter to her mother's home in Bossier City. Petitioner soon moved to an apartment on Mansfield Road in Shreveport. S.C. would take her daughter to visit Petitioner, and they usually met halfway due to the distance between them.

On a Wednesday in late September 2006, Petitioner refused to meet S.C. at her office or elsewhere to pick up his daughter. He insisted that S.C. bring the child to his apartment. S.C. went inside, which she ordinarily did not do, to use the bathroom and to exchange some items of property. She noticed that Petitioner rather oddly pulled the door open and jumped back, the temperature was freezing in the apartment, and Petitioner had mussed hair and otherwise did not appear like his normal self.

S.C. leaned down to pick up a framed print that she was there to retrieve when Petitioner suddenly put his arms around her neck and waist and told her: "Don't scream. Just don't scream." She then saw on the edge of his bed a washcloth, two strips of duct tape, and a screwdriver handle with a razorblade taped to it. She "went nuts" kicking and screaming,

and Petitioner tried to shove a washcloth in her mouth. He ripped off her shirt and bra and slashed at her with the blade. He then punched her in the head three times. Their daughter walked into the room as this was happening and Petitioner grabbed her by the arm and threw her out the door.

Petitioner started asking S.C. questions like why she bugged his house, why she had him followed, and who she was having an affair with. S.C. begged Petitioner not to kill her. Petitioner said he was not going to kill her, but he would hurt her as bad as she had hurt him. The child wandered back in and crawled on the bed with her mother.

Petitioner tried to take S.C.'s pants off, and her cell phone fell out of a pocket. S.C. managed to dial 911 but could not press send before Petitioner took the phone and snapped it in half. S.C., during the struggle with Petitioner, grabbed the bladed weapon, which cut her hands. Petitioner started biting her to get her to release the weapon. When she did, he threw the weapon across the room.

S.C. asked for a rag because she was bleeding. Petitioner went to the kitchen to get her a glass of water. S.C. wanted to run with her child, but the room was spinning and she thought she would pass out. Petitioner returned and taped wash rags to her hands, then taped her wrists together. He again quizzed her about his house being bugged, tracking devices, and the like. She managed to persuade him to cut the tape that bound her wrists.

Petitioner then straddled S.C. and told her that they were going to have sex one last time. S.C. started to scream and yell for help. Petitioner punched her in the head until the room went black. Petitioner then raped S.C., orally and using his penis and fingers to

penetrate her vagina and anus. She begged him to put on a condom, which he did. Petitioner said that he was not going to be able to finish because he had been masturbating too much. He eventually crawled off of her and gave her a sweatshirt to wear. Petitioner asked if S.C. wanted him to call 911 or take her to the hospital. She chose a call to 911, and Petitioner made it.

S.C. asked Petitioner to wait outside until paramedics arrived. Petitioner said he first had to kiss his daughter goodbye, tell her daddy loved her, and that he was going away for a long time. He then went outside, where a policeman later encountered him. Petitioner told the officer, "Look, I'm the one you're looking for ... I jumped on my wife or my soon to be ex-wife."

S.C.'s wounds required stitches, and her face was bruised. Petitioner had bruises on his knuckles, bite marks on his forearm, and S.C.'s blood on his shorts and socks. A rape kit examination did not reveal any sperm, but it did yield prostate specific antigens. Testing was consistent with Petitioner and excluded more than 99% of males.

**Exhaustion of State Court Remedies**

An application for a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). State courts, like federal courts, enforce federal law. The statute serves the interest of comity; it requires a prisoner who challenges his state conviction on grounds that it violates federal law to allow the state courts the first opportunity to review the federal claim and provide any necessary relief from the state conviction.

The statute requires that state prisoners give state courts a "fair opportunity" to act on their claims. O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999). To provide that opportunity, the prisoner must fairly present his claim "in each appropriate state court." Baldwin v. Reese, 124 S.Ct. 1347, 1349 (2004). And he must "present his claims before the state courts in a procedurally proper manner according to the rules of the state courts." Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999), quoting Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988). Petitioner did not, as will be demonstrated below, present his claims to the state appellate court in a procedurally proper manner.

Petitioner did not file a writ application to the Supreme Court of Louisiana after the appellate court ruled on his direct appeal. Petitioner makes a conclusory claim in some filings that he did file such a writ application. He has made many filings, but there is no evidence in the West publishing system or the state court record before the court that such an application was filed. Petitioner did not, therefore, exhaust his state remedies with respect to any claim pursued on direct appeal. O'Sullivan, 119 S.Ct. at 1732-33.

Petitioner attempted to exhaust most, if not all, of the claims presented here during the post-conviction application process. Louisiana law provides that an application for post-conviction relief shall be by written petition addressed to the district court for the parish in which the petitioner was convicted. La. C.Cr.P. art. 926. "The petitioner may invoke the supervisory jurisdiction of the court of appeal if the trial court dismisses the application or otherwise denies relief on an application for post conviction relief." Article 930.6(A). The next step is provided for in Supreme Court Rule X, § 5(a), which allows 30 days to file an

application to the Supreme Court of Louisiana to seek review of a judgment of the court of appeal after a denial of a writ application. The comments to Article 930.6 explain: "Review of post conviction applications should be considered initially by the court of appeal. Thereafter, defendant or the state may apply to the supreme court."

Petitioner filed a post-conviction application in the trial court where he was convicted. The first issue he listed was a claim that the courts had denied his right to appellate review and ability to present post-conviction claims by not providing him a free copy of the entire trial record, the victim's medical records, a copy of the fire department's report, a copy of jail booking records and photo, and an inspection of the cameras used to take photographs at the scene of the crime and at the jail. He also listed essentially all of the other claims he now includes in his federal petition. Tr. 1065-1116. Judge Michael Pitman issued a three-page ruling that denied the claims as repetitive from appeal, being unfounded allegations without any evidentiary support, and otherwise lacking in merit. Tr. 1288-90.

The trial court's ruling issued on May 13, 2011. Petitioner then prepared a document that he titled Application for Post Conviction Relief with Memorandum of Law, Request for Documents and Request for an Evidentiary Hearing. He submitted it to the state appellate court, which stamped it as received on May 23, 2011. Tr. 1292. That document begins by complaining that Petitioner was denied a free copy of the record of his entire case, and he needed the records to have an adequate opportunity to present his post-conviction claims. Under the heading, "Issues Presented," Petitioner complained that he had been denied his right to appellate review and a free copy of the record to allow an adequate opportunity to

fairly present post-conviction claims. He then stated that he was of the opinion from his memory that he had certain claims, and he referenced an attachment that set forth the 36 post-conviction claims he presented to the trial court. The entire body of the main filing, however, was devoted to arguments about the need for a free copy of the record, all audio and text records, doctor reports, and the like. Petitioner complained that he needed this information to meet deadlines for filing his post-conviction application and federal habeas petition. After eight pages of complaining solely about the denial of a record, Petitioner stated under the heading "Conclusion" that he prayed the appellate court order the clerk of court or court reporter provide him a free copy of trial and pretrial records, including audio and other evidence. Tr. 1292-99.

A few days later, on June 2, state appellate court staff director Mark Tatum wrote Petitioner a letter (Tr. 1487):

> The Court is in receipt of your request for relief. This is a Court of review that reviews the decisions of lower courts. If you have a complaint about your case, you must first seek relief in the lower court, get a ruling, and then, if necessary, seek review from this Court. Your documents fail to contain a copy of any filing allegedly made by you in the trial court, or a copy of any judgment or ruling rendered by the trial court on the alleged filing.
>
> The rules on contents of the application (Rule 4-5) are applied stringently, so any application for supervisory review must comply with that rule. If accepted as a formal filing, your documents would not support the granting of any relief. I hope this assists you in seeking review from this Court. Your documents are being returned as an assistance to you.

The appellate court marked as filed on July 8, a submission by Petitioner that he began with this letter (Tr. 1291):

> Please find both my post-conviction application and a copy of the denial of such by the District Judge of Caddo Parish included. Also find a copy of the mandamus I filed and was granted to me. I believe this fulfills all of Mark's requests.

The mandamus Petitioner references was simply an earlier order from the appellate court that the trial court address the post-conviction application in a timely manner. Attached to the letter and again stamped as received by the Clerk of Court was the submission described above in which Petitioner devoted his entire argument to complaining about the lack of a transcript and attached as a mere exhibit the description of the post-conviction claims that he could recall. Petitioner apparently presented the claims in an effort to meet his burden of identifying specific errors that would warrant a free transcript so he could flesh them out.

The appellate court, quite reasonably, treated the submission as a complaint about the lack of a free transcript rather than a challenge to the trial court's decision on the merits of the post-conviction claims. The appellate court, not seeing an attached decision from the trial court denying a motion for a free transcript, issued this decision (Tr. 1390-91):

> The applicant, Michael Scott Crosby, seeks review of the trial court's denial of his request for production of documents which he alleges he requires to aid in preparing his post-conviction relief application.
>
> The applicant fails to include a copy of the filing made with the trial court requesting records or a copy of the trial court's order or ruling on the filing as required by URCA 4-5. The applicant does include a copy of his post-conviction relief application and the trial court's ruling on that filing; however, it does not appear to be related to the applicant's current request for supervisory review by this Court.

> Without a copy of the judgment, order or ruling complained of or a copy of each pleading on which the judgment, order or ruling was founded, it is impossible to glean from the writ application record the trial court's disposition, if any, of the applicant's post-conviction writ application. Thus, the applicant's writ application is denied without prejudice.

The denial was without prejudice, so Petitioner could have squarely presented an application to the appellate court to review the trial court's denial of his post-conviction application. He did not do that. Instead, he bypassed review of his claims in the appellate court and filed an application (Tr. 1393) to the Supreme Court of Louisiana and a memorandum that set forth his 35 claims plus copies of the lower court rulings. He also complained that he was a political prisoner being held to cover up the crimes of the authorities. Tr. 1393-1558. The Supreme Court of Louisiana denied writs without comment. Tr. 1559.

The exhaustion doctrine requires an applicant to "present his claims before the state courts in a procedurally proper manner according to the rules of the state courts." Mercadel v. Cain, 179 F.3d at 275. The exhaustion doctrine is often described as requiring that the issue be properly presented to the highest court of the state, but Mercadel held that the direct filing of a claim for the first time in the Supreme Court of Louisiana was not proper exhaustion because such a presentation was not consistent with the state court's rules. That holding is consistent with a statement by the Supreme Court that a prisoner must fairly present his claims "in each appropriate state court" to properly exhaust them. Baldwin, 124 S.Ct. at 1349.

The Supreme Court has held that state prisoners must give the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 119 S.Ct. at 1732, 33. The claims at issue in O'Sullivan were held unexhausted because the prisoner did not include them in a petition for a discretionary writ in the state's highest court. What Petitioner did in this case, by bypassing the intermediate appellate court, was far more offensive to the exhaustion doctrine, and it more seriously undermined the desire that the state court system have the first fair opportunity to address constitutional claims. That is because the vast majority of discretionary writ applications in the Supreme Court of Louisiana result in an unexplained denial. On the other hand, when writ applications are properly presented to the state appellate courts, the result is usually a reasoned opinion that may or may not remand some claims for evidentiary hearing and additional proceedings. By effectively skipping the appellate court, Petitioner deprived the State of its last best opportunity for a state court decision that fairly addressed the claims at issue. It also deprived the federal courts of an opportunity to obtain a reasoned appellate opinion to which this court could more effectively apply the deference due on habeas review under Section 2254(d).

Petitioner fairly presented to the appellate court only his complaint about the lack of a transcript and other evidence. To the extent he also sought review of the trial court's decision on the merits of his post-conviction issues, his presentation was not made in a manner that made that in any way clear, and the appellate court was reasonable to treat the application as it did — a complaint only about the lack of a free transcript. Petitioner did not,

therefore, fairly present his claims at each appropriate state court in accordance with the rules of the state courts. He bypassed an essential part of the state's appellate review process, so he did not exhaust his state court remedies. See Canady v. Thaler, 2013 WL 2947196, *2 (S.D. Tex. 2013) (dismissing claims when prisoner "bypassed part of the state's appellate process"). State relief is no longer available due to the period of limitations, so Petitioner's claims are considered to be technically exhausted and subject to a procedural default. Jones v. Jones, 163 F.3d 285, 296 (5th Cir. 1998).

**Procedural Default; Cause and Prejudice**

A procedural default may be excused only upon a showing of "cause" and "prejudice" or that application of the doctrine will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 111 S.Ct. at 2564 (1986). The "cause" standard requires the petitioner to show that some objective factor external to the defense impeded his efforts to raise the claim in state court. Murray v. Carrier, 106 S.Ct. 2639 (1986). As for the second factor, a "showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied 'fundamental fairness' at trial." Murray, 106 S.Ct. at 2648.

Petitioner has not and cannot demonstrate cause for his failure in the appellate court. The method by which he proceeded was solely his own doing, and he chose to complain about the lack of a free transcript that might permit him to come up with additional claims, rather than seek review of the claims he had already presented to the trial court. There is also no showing of prejudice. Petitioner received a very fair trial presided over by Judge Jeanette

Garrett, with some pretrial matters handled by Judge Scott Crichton, both of whom showed remarkable patience and restraint despite Petitioner's unreasonable and sometimes outrageous behavior. His trial was more than fundamentally fair, despite his efforts at derailing it.

The fundamental miscarriage of justice exception applies only in rare and extraordinary cases when petitioner shows, as a factual matter, that he is actually innocent: that he did not commit the crime of conviction. Reed v. Stephens, 739 F.3d 753, 767 (5th Cir. 2014). To establish the requisite probability that he was actually innocent, the petitioner must establish through new and reliable evidence (not presented at trial) that it was "more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Reed, 739 F.3rd at 767; Schlup v. Delo, 115 S.Ct. 851 (1995).

Petitioner, of course, maintains that he is innocent, but he has presented no new and reliable evidence that would make it more likely than not that no reasonable juror would have voted to convict him of forcible rape. All of the evidence submitted at trial, including the victim's devastating testimony, the corroborating wounds to the victim and Petitioner, and the scientific evidence, strongly supported the guilty verdict. Petitioner offers nothing but bold and unsupported assertions that evidence was falsified or planted and that witnesses lied. That does not come close to meeting his burden. All of his claims are, therefore, procedurally barred.

An alternative approach to the lack of proper exhaustion, resulting in a procedural default, is to view the appellate court's decision as directly giving rise to a procedural

default. The writ application was denied because Petitioner did not attach to his application a copy of the lower court's ruling (on a request for a free transcript) as required by URCA 4-5. The Supreme Court of Louisiana issued an unexplained denial, so the court "looks through" that denial to the last reasoned judgment, which is from the appellate court, to see if it clearly and expressly rested on a state procedural bar. Ylst v. Nunnemaker, 111 S.Ct. 2590 (1991). Failure to comply with URCA 4-5 has been held to be a procedural bar to habeas review. Hopkins v. Cain, 228 Fed. Appx. 458 (5th Cir. 2007); Cann v. Louisiana Parole Board, 2011 WL 6010013, *3 (W.D. La. 2011).

Whether one views these proceedings as giving rise to a pure procedural default or one that is applied based on technical exhaustion of remedies, the result is the same. Petitioner did not properly present his claims at the state appellate level, and he is now precluded from obtaining federal habeas review on those claims. Petitioner could have easily made a proper presentation of his claims but, as he often does, he chose to not follow the rules and attempted to further complicate his case. By doing so, he deprived himself of the opportunity for federal review.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a COA when it enters a final order adverse to the applicant. "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 120 S.Ct. 1595, 1604 (2000). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a COA should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 4th day of August, 2014.

_____
Mark L. Hornsby
U.S. Magistrate Judge