UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

MICHAEL SCOTT CROSBY                    CIVIL ACTION NO. 10-cv-1581

VERSUS                                  JUDGE WALTER

WARDEN, LOUISIANA STATE                 MAGISTRATE JUDGE HORNSBY
PENITENTIARY

## REPORT AND RECOMMENDATION

**Introduction**

A Caddo Parish grand jury indicted Michael Scott Crosby ("Petitioner") with one count of aggravated rape and one count of aggravated kidnapping.  A jury convicted him of a lesser count of forcible rape and could not reach a verdict on the kidnapping charge.  Petitioner was sentenced to 40 years imprisonment.

Petitioner frequently complained about his attorneys, vacillated between wanting counsel and asking to represent himself, engaged in frequent outbursts and misbehavior in the courtroom, and had to be removed during his own testimony after he accused the judge of conspiring with the prosecution to conceal evidence.  He complained on direct appeal that he was denied his right to self-representation, should not have been removed from the courtroom, and was denied the right to testify.  The appellate court affirmed the conviction. State v. Crosby, 6 So.3d 1281 (La. App. 2d Cir. 2009).

Petitioner filed a post-conviction application in state court and raised 35 claims, which he later presented to this court in a 116-page federal habeas petition.  The claims included

invalid arrest warrant, excessive bail, denial of a preliminary exam, conviction by conspiracy, planted evidence, judicial misconduct, errors in court minutes, conviction by a biased jury, and denial of appeal.

Judge Stagg entered a judgment in 2014 that denied all claims as procedurally barred. Doc. 74; Crosby v. Warden, 2014 WL 4810322 (W.D. La. 2014). The Fifth Circuit denied a COA. Doc. 76; (5th Cir. 14-31222; Sep 04, 2015). Almost a year later, in August 2016, Petitioner has returned with a "Motion for § 28 U.S.C. Rule 60(b)(6)". Doc. 81. For the reasons that follow, it is recommended the motion be denied.

**Background Facts**

Petitioner and the victim, S.C., were married for several years and had a daughter who was almost two years old. S.C. filed for divorce and moved with her daughter to Bossier City. Petitioner soon moved to an apartment on Mansfield Road in Shreveport. S.C. would take her daughter to visit Petitioner, and they usually met halfway due to the distance between them.

One day in September 2006, Petitioner refused to meet S.C. at her office or elsewhere to pick up his daughter. He insisted that S.C. bring the child to his apartment. S.C. went inside, which she ordinarily did not do, to use the bathroom and to exchange some items of property. She noticed that Petitioner rather oddly pulled the door open and jumped back, the temperature was freezing in the apartment, and Petitioner had mussed hair and otherwise did not appear like his normal self.

S.C. leaned down to pick up a framed print that she was there to retrieve when Petitioner suddenly put his arms around her neck and waist and told her: "Don't scream.  Just don't scream."  She then saw on the edge of his bed a washcloth, two strips of duct tape, and a screwdriver handle with a razorblade taped to it.  She "went nuts" kicking and screaming, and Petitioner tried to shove a washcloth in her mouth.  He ripped off her shirt and bra and slashed at her with the blade.  He then punched her in the head three times.  Their daughter walked into the room as this was happening and Petitioner grabbed her by the arm and threw her out the door.

Petitioner started asking S.C. questions like why she bugged his house, why she had him followed, and who she was having an affair with.  S.C. begged Petitioner not to kill her.  Petitioner said he was not going to kill her, but he would hurt her as bad as she had hurt him.  The child wandered back in and crawled on the bed with her mother.

Petitioner tried to take S.C.'s pants off, and her cell phone fell out of a pocket.  S.C. managed to dial 911 but could not press send before Petitioner took the phone and snapped it in half.  S.C., during the struggle with Petitioner, grabbed the bladed weapon, which cut her hands.  Petitioner started biting her to get her to release the weapon.  When she did, he threw the weapon across the room.

S.C. asked for a rag because she was bleeding.  Petitioner went to the kitchen to get her a glass of water.  S.C. wanted to run with her child, but the room was spinning and she thought she would pass out.  Petitioner returned and taped wash rags to her hands, then taped

her wrists together.  He again quizzed her about his house being bugged, tracking devices, and the like.  She managed to persuade him to cut the tape that bound her wrists.

Petitioner then straddled S.C. and told her that they were going to have sex one last time.  S.C. started to scream and yell for help.  Petitioner punched her in the head until the room went black.  Petitioner then raped S.C., orally and using his penis and fingers to penetrate her vagina and anus.  She begged him to put on a condom, which he did.  Petitioner said that he was not going to be able to finish because he had been masturbating too much.  He eventually crawled off of her and gave her a sweatshirt to wear.  Petitioner asked if S.C. wanted him to call 911 or take her to the hospital.  She chose a call to 911, and Petitioner made it.

S.C. asked Petitioner to wait outside until paramedics arrived.  Petitioner said he first had to kiss his daughter goodbye, tell her daddy loved her, and that he was going away for a long time.  He then went outside, where a policeman later encountered him.  Petitioner told the officer, "Look, I'm the one you're looking for ... I jumped on my wife or my soon to be ex-wife."

S.C.'s wounds required stitches, and her face was bruised.  Petitioner had bruises on his knuckles, bite marks on his forearm, and S.C.'s blood on his shorts and socks.  A rape kit examination did not reveal any sperm, but it did yield prostate specific antigens.  Testing was consistent with Petitioner and excluded more than 99% of males.

**Denial of Habeas Relief; Procedural Bar**

The habeas statute, 28 U.S.C. § 2254, requires that state prisoners give state courts a "fair opportunity" to act on their claims. O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1732 (1999). To provide that opportunity, the prisoner must fairly present his claim "in each appropriate state court." Baldwin v. Reese, 124 S.Ct. 1347, 1349 (2004). And he must "present his claims before the state courts in a procedurally proper manner according to the rules of the state courts." Mercadel v. Cain, 179 F.3d 271, 275 (5th Cir. 1999), quoting Dupuy v. Butler, 837 F.2d 699, 702 (5th Cir. 1988).

The court reviewed in detail, in a 15 page Report and Recommendation (Doc. 69), why Petitioner did not present his claims to the state courts in a procedurally proper manner. Petitioner's principal failing was that, after the trial court denied his post-conviction application, he bypassed review of his claims in the appellate court and filed an application to the Supreme Court of Louisiana. The exhaustion doctrine requires an applicant to "present his claims before the state courts in a procedurally proper manner according to the rules of the state courts." Mercadel v. Cain, 179 F.3d at 275. The direct filing of a claim for the first time in the Supreme Court of Louisiana is not proper exhaustion because such a presentation is not consistent with the state court's rules. Id. That holding is consistent with a statement by the Supreme Court that a prisoner must fairly present his claims "in each appropriate state court" to properly exhaust them. Baldwin, 124 S.Ct. at 1349. See also Canady v. Thaler,

2013 WL 2947196, *2 (S.D. Tex. 2013) (dismissing claims when prisoner "bypassed part of the state's appellate process").

The Report and Recommendation discussed at length the procedural history related this issue, and it went on to determine that Petitioner could not show cause and prejudice to overcome the procedural default.  It noted that Petitioner received a very fair trial presided over by Judge Jeanette Garrett, with some pretrial matters handled by Judge Scott Crichton, both of whom showed remarkable patience and restraint despite Petitioner's unreasonable and sometimes outrageous behavior.  His trial was more than fundamentally fair, despite his efforts at derailing it.

The Report and Recommendation also discussed the fundamental miscarriage of justice exception, which applies only in rare and extraordinary cases when a petitioner shows, as a factual matter, that he is actually innocent: that he did not commit the crime of conviction.  Reed v. Stephens, 739 F.3d 753, 767 (5th Cir. 2014).  Petitioner maintained that he was innocent, but he presented nothing but bold and unsupported assertions that evidence was falsified or planted and that witnesses lied.  That did not come close to meeting his burden.  All of his claims were, therefore, denied as procedurally barred.

**Analysis**

The law places strict limits on the ability of habeas petitioners to bring claims after their first petition is denied.  28 U.S.C. § 2244(b).  The first issue in this case is whether Petitioner's Rule 60(b) motion is actually a second or successive petition within the meaning

of Section 2244.  If so, Petitioner must have permission from the Court of Appeals to proceed.  But if the motion is a true Rule 60(b) motion, it  may be decided by the district court.  The Supreme Court has stated that a district court may consider such a motion when the prisoner merely asserts that a previous ruling that precluded a merits determination, such as invocation of a procedural default, was in error.  Gonzalez v. Crosby, 125 S.Ct. 2641 (2005); In re Coleman, 768 F.3d 367 (5th Cir. 2014).

Petitioner's 72-page motion, which is accompanied by 243 pages of exhibits, begins with a citation to Gonzalez and a representation that this is not a successive petition because the district court never ruled on the merits of the asserted errors.  That exception does allow Petitioner to present the district court with a Rule 60(b) motion that challenges the court's prior determination that the claims are subject to a procedural bar.  Petitioner, however, does not limit his arguments to addressing the correctness of the prior decision on the procedural bar.  Rather, he goes on at length to argue that the prior rulings are defective because Petitioner "is a political prisoner who was convicted by a star chamber sedition trial," and a "KKK/Nazi criminal cabal has used its influence at every stage of prosecution and appeal to silence then punish Petitioner for his attempts to document and expose that cabal and because he refuses to convert to their brand of Christianity."  He then goes on at length to accuse everyone from Angola prison administrators to the judges of this court and the Fifth Circuit of engaging in a grand conspiracy to deny his rights.  Petitioner similarly accuses the state court judges and prosecutor of destroying, altering, or covering up evidence, and he

accuses virtually every trial witness of committing perjury with the knowledge of the prosecution.

Petitioner does speak briefly to the procedural bar issues at pages 8-12 of his motion. But Rule 60(b)(6) does not allow the court to relieve a party from a final judgment merely because the same or perhaps or more persuasive arguments are raised.  The finality of judgments must be respected, so a movant seeking relief under Rule 60(b)(6) must show "extraordinary circumstances" that justify reopening a final judgment.  Gonzalez, 125 S.Ct. at 2649.  "Such circumstances will rarely occur in the habeas context."  Id.

Gonzalez held, for example, that extraordinary circumstances were not present when a habeas petitioner pointed to a recent Supreme Court decision that changed the law on limitations tolling in the circuit that had dismissed his petition as untimely.  Gonzalez concluded that such changes in the law, even if they would have changed the result, were "hardly extraordinary" so did not warrant relief.  Id.  125 S.Ct. at 2650.  See also Adams v. Thaler, 679 F.3d 312, 320 (5th Cir. 2012) (new Supreme Court decision regarding procedural default was not an extraordinary circumstance).

Petitioner does not point to any new law or even new facts.  He simply trots out the same arguments and issues that were considered and rejected in the original proceedings. Petitioner had ample opportunity to make those arguments in his objections to the Report and Recommendation and in his application to the Fifth Circuit.  Petitioner also argues that his actual innocence "is a foregone conclusion," but his assertion is based on nothing but his

charge that all of the witnesses were lying. Petitioner's conspiracy-based, conclusory, and already rejected arguments do not come close to establishing the exceptional circumstances that might warrant relief under Rule 60(b). To the extent Petitioner presents new substantive claims in his lengthy submissions, this court does not have jurisdiction to consider them because Petitioner did not obtain prior authorization from the Fifth Circuit pursuant to 28 U.S.C. § 2244(b)(3)(A). <u>Adams</u>, 679 F.3d at 321.

Accordingly,

**IT IS RECOMMENDED** that the "Motion for § 28 U.S.C. Rule 60(b)(6)" (Doc. 81) be denied.

<h3 style="text-align:center">Objections</h3>

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court.  See <u>Douglass</u> <u>v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of September, 2016.

Mark L. Hornsby
U.S. Magistrate Judge